## THE EDMUND L. LEVY.

### (District Court, S. D. New York. May 8, 1901.)

Tow—Collision with Wreck.

Two wrecks were sunk in about mid-channel of a river about 1,600 feet apart. Their positions were known to the captain of a tow, and were marked by buoys, and at night should have been lighted. A tow and tug had passed the wreck safely at night, but a following tow, the wrecks not being properly lighted, ran upon one of them. There was nothing extraordinary in the wind or tide, but the size of the tow had probably something to do with the result; although it was not too large to go with safety sufficiently far to the west of the wreck to escape the danger. *Held* that, as plaintiffs had full knowledge of the obstructions and their location, they should have so regulated the size of the tow and its navigation as to have cleared them, and were liable for the resulting injuries.

J. J. Macklin, for libelant.

Ames Van Etten, for claimant.

BROWN, District Judge. It was probably nearly dark when the plaintiff's boat was run upon the obstruction which was near the center of a channel way about 400 feet wide three-fourths of a mile or more below Albany. There were two wrecks, which had been sunk a week or two before, both in about mid-channel and about 1,600 feet apart. They were situated where there was a slight bend in the river and where the ebb tide sets a little to the eastward. Their positions were known to the claimants and their captain. The wrecks were marked by buoys and at night they should have been lighted. The captain says he was told by some of the government men that they would attend to lighting them. There is no evidence showing that the alleged undertaking to light the wrecks was made by any one in authority or responsibility, or that the captain or the claimants had any right to rely upon it. They were not properly lighted, and that fact must have been evident to the captain some time before they were reached. The captain in charge of the tow says distinctly that the boat was run upon the lower submerged wreck because he did not keep off enough to the westward in passing. The first wreck had been passed safely to the westward; and when he passed that, he says that he could not see the buoy of the wreck below, but that he went as far to the westward as he could.

I do not think that statement can be accepted, inasmuch as another tug and tow a little ahead, had passed the lower wreck safely. If that excuse were good it would follow that the same collision would have happened in any event though the wrecks had been properly lighted; in other words, that the accident was inevitable, because the tow could not have been taken past the lower obstruction without collision. If that were true, the claimants were to blame for sending out so large a tow.

It is very probable that the size of the tow had much to do with the result. But the claimants knew all the circumstances. There was nothing extraordinary in the wind or tide; and the claimants were bound to start the tow so as to pass the wrecks by daylight, or else to see that the buoys were lighted, if lighting was really

necessary to safety. The claimants were also answerable for the size of the tow, if it was too long or large to pass safely.

But I do not think it probable that the tow was too large to go to the westward with safety. It is not probable that the claimants, knowing the situation, with their experience, would have sent out a tow that could not with reasonable skill and judgment have been taken safely past both obstructions, as the tow ahead was taken. There were two helper tugs, and with those I have no doubt the tow could have been kept under perfect control. The captain could have stopped the tow if he had needed to do so, until the exact place of the lower wreck had been ascertained. He did not probably need to do so, because the lights of the tow ahead would naturally be a sufficient indication where he should go.

As the claimants had full knowledge of both obstructions and their location in about the center of the channel, it was their duty to regulate the size of the tow, its time of starting, the number of helpers, and the navigation, so as to clear the obstructions. There were no extraordinary conditions of wind or tide to prevent a safe passage. I must, therefore, hold the claimants liable, whether the accident arose from too great size of the tow to be kept off sufficiently to the westward, from the inefficiency of the helpers, or from the other circumstances named, or from what I regard as the most probable, the failure of the tug to keep to the westward in proper time, i. e. early enough to be effective.

Decree for libelant with costs.